## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DOUGLAS B. HURON and UNITED STATES SOCIETY FOR AUGMENTATIVE AND ALTERNATIVE COMMUNICATION, INC. (USSAAC); | : : : : : | |
| Plaintiffs, | : : | |
| vs | : : | **COMPLAINT** |
| JOHN BERRY, in his official capacity as Director of the United States Office of Personnel Management and UNITED STATES OFFICE OF PERSONNEL MANAGEMENT | : : : : | Civil Action No. _____ |
| Defendants. | : : | |

## PRELIMINARY STATEMENT

1.    Douglas B. Huron and members of the United States Society for Augmentative and Alternative Communication ("USSAAC") are enrolled in the Federal Employee Health Benefits Program (FEHBP).  Mr. Huron and these other individuals have severe communication impairments and require an item of medical equipment known as a "speech generating device" (SGD) to meet daily communication needs.  Perhaps the best known SGD user is the physicist Stephen Hawking, who suffers from ALS, or Lou Gehrig's Disease.

2.    Defendants administer the FEHBP.  Defendants are required by the Federal Employee Health Benefits Act (FEHBA), 5 U.S.C. § 8901 *et seq,* to negotiate and to approve annually the health insurance benefit plans offered by private insurers to federal employees and their families.  These negotiations are required to advance the purposes and goals of the Act.  Those goals include providing federal employees catastrophic coverage; offering them the best

possible health coverage at the lowest costs to the employee and to the government; ensuring that health benefits available to federal workers are equivalent or comparable to those offered to private sector workers; and making sure that health benefits offered to federal employees reflect contemporary medical knowledge and practices.

3.     With regard to SGD coverage, Defendants have failed to advance these statutory objectives.  As reflected in professional literature and in clinical practice, SGDs are a well-established and effective device prescribed for individuals with severe communication disorders. They are rarely needed but routinely covered in thousands of health insurance policies and benefits plans offered in the private sector, including a substantial majority of the same insurers participating in the FEHBP.  SGDs also are covered by all other federal health programs, such as Medicare, Medicaid, the VA, and Tricare. As a general matter, because SGDs are needed by so few people, their costs to insurers or other health benefits programs are *de minimis.*

4.     SGDs also should be routinely covered by the FEHBP plans.  SGDs meet or fit within the benefits categories included in the FEHBP plans, but in many of them, SGD coverage is expressly excluded or uniquely limited as compared to other covered medical equipment items.

5.     Defendants have not conducted an investigation of contemporary professional literature, opinion, policy or practice regarding the appropriateness and effectiveness of SGDs, of the cost of SGD coverage, or of the scope of SGD coverage available to private sector employees.  Defendants have not negotiated with FEHBP plan sponsors over SGD coverage. Instead, for years and without explanation, Defendants have failed to require plan sponsors to include SGD coverage equal to other equipment items or to justify SGD coverage limitation or

exclusion.  This scope of coverage is neither comparable nor equivalent to the SGD coverage available to private sector workers.  Private insurers overwhelmingly offer SGD coverage on the same terms as other items of covered durable medical equipment ("DME").  Exclusion or limitation of SGD coverage does not reflect well-established medical knowledge, standards or practices, and has no actuarial justification.

6.      Plaintiffs therefore seek a declaratory judgment that Defendants' acts and omissions regarding SGD coverage by FEHBP plans are contrary to law and arbitrary and capricious, in violation of the Administrative Procedure Act, 5 U.S.C. § 706.  Plaintiffs also seek injunctive relief ordering Defendants to direct all FEHBP plan sponsors to cover SGDs to the same extent and scope as other covered DME, unless they produce a factual or actuarial justification to support lesser coverage.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 to review and set aside arbitrary and capricious actions and omissions of the defendants.  This Court is authorized by 5 U.S.C. § 706 and 28 U.S.C. § 2201-02 to grant the relief requested.

8.      The venue for this action properly lies in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).  Defendants reside in this judicial district and the events and omissions giving rise to the claims asserted here occurred in this judicial district.

## PARTIES

9.      Plaintiff Douglas B. Huron resides in the District of Columbia and is a member of USSAAC.  Mr. Huron is an attorney who practices before this Court.  Since 2002, he has not

been able to produce intelligible speech due to the progressive effects of Primary Lateral

Sclerosis (PLS), which was diagnosed in 1992. Mr. Huron communicates orally by using an

SGD called a DynaWrite. He types a message which appears on the DynaWrite's small screen,

then presses a button which directs the device to speak the message. Although Mr. Huron is not

able to type fast enough to engage in the rapid fire exchanges that occur in court, with the

DynaWrite he can communicate with colleagues and clients and is otherwise able to continue to

practice law. Mr. Huron also uses the DynaWrite to communicate with his wife, children and

friends.

10.     The DynaWrite is essential to Mr. Huron's ability to function in society. This

device costs approximately $ 5,000 and in the past was covered by Mr. Huron's private-sector

health insurance policy. Since early 2009, however, he has been a dependent under the health

benefits plan of his wife, who is a federal government employee and participates in the FEHBP

with the Government Employees Health Association ("GEHA") as his health plan sponsor. Mr.

Huron also is eligible for and receives benefits from Medicare. Huron's current SGD is more

than five years old, is no longer functional and must be replaced. To communicate, Mr. Huron is

relying on a borrowed, used DynaWrite.

11.     Although the DynaWrite fits within the GEHA plan's scope of covered benefits, it

is expressly excluded from coverage. For this reason, if Mr. Huron purchased a new Dynawrite,

instead of Medicare and GEHA each reimbursing part of its cost, GEHA will contribute zero.

Because Defendants have not negotiated with GEHA to cover SGDs or to justify non-coverage,

which has caused Mr. Huron injury, and it is thus futile for Mr. Huron to request that GEHA

approve a replacement for his DynaWrite.

12.     As residents of the District of Columbia, Mr. Huron and his wife may select from several nationwide plans as well as several local plans.  The nationwide plans either exclude SGDs or offer coverage that is not comparable to – substantially less than – other DME items. Two local plan sponsors expressly exclude SGDs.  Three offer SGD coverage equal to that of other DME items, but none of these plans are able to meet Mr. Huron's family's health care needs at a lower cost than GEHA.  In short, changing to another plan is not a meaningful option.

13.     Plaintiff United States Society for Augmentative and Alternative Communication, Inc. (USSAAC) is the United States national chapter of the International Society for Augmentative and Alternative Communication. USSAAC members include individuals with severe communication impairments who need or use AAC techniques, including SGDs; family members; speech-language pathologists; speech-language pathology and special education educators; advocates for persons with disabilities; and SGD manufacturers.

14.     USSAAC secures and protects the rights of its members and other individuals with severe communication impairments by advocating for the broadest scope of SGD coverage by all funding programs and sources. One of its core roles is to influence public policy related to SGD coverage at the national and state levels.  To further that organizational goal, USSAAC has participated as a plaintiff and as *amicus curiae* in actions challenging Medicaid and private insurance SGD coverage barriers.  USSAAC also was a sponsor of the advocacy effort that persuaded Medicare to develop its current SGD coverage guidelines.  For Medicaid programs, USSAAC has developed a set of model SGD coverage criteria that have been adopted by some states.  In addition, USSAAC's roles include education about AAC interventions, including use of SGDs, provided to speech-language pathologists and other medical and rehabilitation professionals through bi-ennial conferences and research symposia.

15.     Defendants' failure to direct all FEHBP plan sponsors to cover SGDs to the same extent and scope as other covered DME items, unless they produce a factual or actuarial justification to support lesser coverage, directly and adversely impacts USSAAC members. USSAAC members include individuals enrolled in FEHBP plans and who need or use SGDs. Defendants' acts and omissions have caused and will cause USSAAC members to be unable to obtain SGDs that have been prescribed for them, will cause delays in obtaining new or replacement SGDs or will cause these members to pay thousands of dollars to purchase SGDs.

16.     USSAAC, on behalf of its members, challenges Defendants' arbitrary and capricious acts and omissions regarding SGD coverage by FEHBP plans.

17.     Defendant John Berry is the Director of the United States Office of Personnel Management. Mr. Berry is sued in his official capacity.  As Director, Mr. Berry has responsibility to ensure that all OPM activities are performed in compliance with relevant legal standards, including those arising under the Federal Employee Health Benefits Act.

18.      The Office of Personnel Management (OPM) is the federal government agency responsible for administration of the Federal Employee Health Benefits Act.  It has the statutory authority to negotiate and enter into contracts with qualified health insurance carriers to offer plans to participants in the FEHBP.

## STATUTORY BACKGROUND

19.     The Federal Employee Health Benefits Act of 1959, 5 U.S.C. § 8901 *et seq.*, establishes a comprehensive program of health insurance for civilian employees of the federal government.  The Federal Employee Health Benefits Program (FEHBP) is administered by Defendants.

20.     Congress articulated several purposes for enacting the FEHB Act.  Congress intended that the federal government compete with private sector employers in the recruitment and retention of competent personnel and to protect federal government employees against the high and unpredictable costs of medical care.  H.R.Rep. 86-957, 86th Cong. 1st Sess., 1959 USCCAN 2913, 2914.  To accomplish these goals, Congress directed the FEHBP to offer health benefits comparable or equivalent to those available in large private sector plans.  S.Rep. 86-468, 86th Cong. 1st Sess. 2, 4 (July 2, 1959).  Congress further intended that the Defendants negotiate with health plan sponsors to obtain the "best possible" and "maximum" benefits at the lowest possible cost to themselves and to the government.  H.R. Rep. 86-957, at 2916.  Congress has directed that the FEHBP ensure that the cost of premiums is reasonably related to the cost of the benefits offered, 5 U.S.C. § 8902(i), that federal government employees receive "full or substantially full" coverage for "common and catastrophic illness or injury" at moderate cost to themselves and to the federal government, which share program costs,  H.R.Rep. 86-957, at 2916.  Congress determined it best not to impose, by statute, restrictions on benefit coverage so that Defendants could, over time, negotiate contracts with plan sponsors that reflect new developments in treatment and medical services.  S.Rep. 86-468, at 10.

21.     Defendants administer the FEHBP by negotiating with health insurance plan sponsors regarding both benefits offered and premiums charged.  Negotiations are conducted annually. Upon the completion of negotiations, a "plan brochure" is produced, which describes the scope of benefits offered by each sponsor, including coverage limitations and exclusions.

22.     FEHBP plans include "nationwide" plans that are available in every state, and "local" plans that typically are available only within a single state or a portion of a single state. The "nationwide" plans are further divided into plans open to all federal employees and plans

open only to specific populations.  For calendar year 2013, there are six sponsors of nationwide

plans open to all employees that offer a total of 10 plans.  There are four sponsors of nationwide

plans open only to specific types of federal government employees. The nationwide plans are

administered on a "fee for service" basis.  Across the country, there are more than seventy local

plan sponsors. These plans offer coverage to individuals within single states only.  Local plans

are all administered as "health maintenance organizations" (HMOs) or other forms of managed

care.   Federal government employees may choose either a nationwide plan or a local plan

covering individuals and families in their geographical area.

## FACTUAL BACKGROUND

### A.    Facts Related to Speech Generating Devices

23.    Speech generating devices (SGDs) are rechargeable-battery-powered electronic

devices.   Their operation consists of two steps.  First, their users select or create a message,

often by typing on a keypad or selecting letters, words or phrases from a touch-screen.  Then,

SGDs will produce the message in clear, understandable speech.

24.    SGD users are individuals with a severe speech or language impairment who are

unable to meet daily communication needs using speech, writing, sign, gesture or other such

natural communication methods.  Conditions commonly requiring SGD use include congenital

impairments such as cerebral palsy and autism; and acquired impairments, such as Amyotrophic

Lateral Sclerosis (ALS or Lou Gehrig's Disease), traumatic brain injury or brain stem stroke.

Augmentative and alternative communication (AAC) interventions, including use of SGDs, has

been recognized for decades as necessary and appropriate treatment for the speech and language

impairments associated with these conditions.

25.     SGDs are a rarely needed tool, used only by children and adults with the most complex communication disabilities.  Initially, letter, word or picture boards were developed to allow such people to communicate.  Subsequently, electronic devices that produced a visual display of messages or printed messages became available.  In the 1970s, after microprocessor technology enabled the development of speech-synthesizers – programs that can "translate" text or other input into oral speech – "speech generating devices" were produced and have since been used by individuals who require them.

26.     Identification of SGD need is based on well-established principles and procedures, and is the responsibility of speech language pathologists (SLP).  They conduct complete evaluations of clients, most often based on protocols developed by USSAAC, Medicare, Medicaid, or insurers.  When the evaluation identifies SGD need, the SLP will write a report and recommendation for an SGD and any necessary accessories.  The report is then sent to an individual's physician for review and prescription.  These activities have been guided and supported by professional research literature that has been ongoing since the 1950s.  The professional literature and knowledge related to AAC and SGDs includes peer-reviewed journal articles, book chapters, texts and treatises, pre-service and continuing professional education courses, conferences, and "consensus statements."  Statements of professional opinion supporting the medical necessity and appropriateness of SGDs as treatment for severe communication impairment have been written by the American Medical Association, American Academy of Neurology, American Academy of Pediatrics, American Academy of Physical Medicine and Rehabilitation and American Speech-Language-Hearing Association.

27.     SGD need is rare, and funding requests for SGDs are even more rare.  It is estimated that approximately 0.1 percent of the general population has expressive

communication impairments sufficiently severe to warrant AAC evaluation.  Of that total, however, only a very small fraction are served each year because of an insufficient number of SLPs able to conduct evaluations to determine SGD need.   For example, Medicare, the nation's largest health benefits program, served less than 2 percent of its estimated population in need in 2001, its first year of SGD coverage.  Ten years later in 2010, it served approximately 6 percent of its population in need.   For the FEHBP, it is reasonably foreseeable that fewer than 150 SGDs nationwide will be requested in the first year if all plans offered SGD coverage equal to that of other DME items.

28.     The Food and Drug Administration has long accepted SGDs as a class of medical devices that are safe and effective for use by people with speech and language impairments.  To the FDA, SGDs are "powered communication systems," which since 1983 have been defined as "an AC- or battery powered device intended for medical purposes … used by persons unable to use normal communication methods because of physical impairment."  21 C.F.R. § 890.3710.

29.     For almost all individuals who need and use SGDs, funding to acquire these devices has come from third party sources rather than direct client payment.  The most frequent funding sources for SGDs have been systems of health benefits.

30.     To qualify for funding by health benefit programs, SGDs must be covered by the program and be medically necessary for the user.   SGDs are routinely recognized as covered because they meet the characteristics of at least one category of covered care, most often as an item of durable medical equipment (DME).  Prosthetic devices is the next most common benefits category under which SGDs are covered.  SGDs are recognized as medically necessary when a

speech language pathologist concludes they are the most appropriate form of treatment to enable particular individuals to meet daily communication needs.

31.     SGD funding by health benefits programs started in the mid- to late-1970s and has expanded substantially in the public and private sectors over time.  By 2000, all state Medicaid programs covered and provided SGDs, both for children and adults.  New Medicare SGD coverage guidelines went into effect on January 1, 2001.  They establish that SGDs are covered as items of DME and outline the speech language pathology evaluation and report required to demonstrate medical necessity.  Medicare covers SGDs without limitation and, since 2001, has been the single largest funding source for SGDs.  In late 2001, Congress authorized the Tricare program to expand SGD coverage for active duty military personnel, military retirees and dependents  FY 2002 National Defense Authorization Act, Public Law 107-107, § 702(2) (Dec. 28, 2001) *amending* 10 U.S.C. § 1077(a)(15).  In 2008, Congress supported expansion of SGD coverage by the Veterans Administration to respond to the communication needs of Iraq and Afghanistan war veterans with traumatic brain injuries.  S. Rep. 110-428, 110th Cong., 2nd Sess. 2008, Military Construction And Veterans Affairs And Related Agencies Appropriation Bill (July 22, 2008).   Tricare and the VA cover SGDs as prosthetic devices.

32.     All federal government sponsored health benefits programs cover SGDs for all beneficiaries, participants, or recipients when medically necessary, except the FEHBP.

33.     SGDs are routinely covered as items of DME or prosthetic devices by health insurance policies or health plans provided to private sector workers.  More than 1,000 insurers and health plans have approved and provided SGDs.  All but one of the 63 Blue Cross and Blue Shield organizations have approved SGDs, as have each of the largest health insurers in the

United States.  For the past several years, approximately 80% of the insurers that sponsored local FEHBP plans have approved SGDs for the private sector workers they insure.  In 2013, approximately 75 % of local plan sponsors have approved SGDs for private sector workers.  Also, dozens of insurers that sponsor local FEHBP plans have SGD specific coverage criteria, most often modeled on the Medicare SGD guidelines.

34.     Almost without exception, insurers and employer sponsored health plans cover SGDs on the same terms and conditions as all covered items of DME or prosthetic devices.  They do not uniquely limit SGD coverage to a particular maximum benefit while leaving other DME coverage uncapped.

35.     The growth of SGD coverage by all systems of health benefits during the past 30 years resulted from: 1) an increasingly widespread recognition in the medical community, supported by the professional literature, that these devices are appropriate and necessary for severely disabled individuals with profound communication impairments and 2) the fact that SGDs are a rarely needed form of treatment which means that the cost to an insurance policy or health plan to cover SGDs is *de minimis*.

**B.     FEHBP Plan Coverage of SGDs**

36.     The scope of benefits covered by FEHBP plans as well as coverage limitations and exclusions are stated in the FEHBP plan brochures.  Plan brochures for nationwide and local FEHBP plans are posted for review at Defendants' web page.

37.     In 2002, OPM was informed that the nationwide FEHBP plans were relying on a specific exclusion to deny SGD coverage requests, but that the text of the exclusion did not

describe SGDs.  In early 2003, OPM informed the plans not to use or rely on the exclusion as the basis for SGD decisions.

38.     For 2004, the nationwide plans re-wrote the text of the challenged exclusion to make it clear that an SGD exclusion was intended.  For example, in 2004 Blue Cross Blue Shield, which sponsors a nationwide FEHBP plan open to all federal workers, and whose plans have the greatest enrollment among all FEHBP plans, issued a plan brochure that stated "computer equipment/devices such as 'story boards' or other communication aids to assist communication-impaired individuals" were not covered items of DME. Contrary to OPM instructions, these plans did not provide a narrative description of the exclusion, which would have included a reason for the change, and actuarial cost information.

39.     In 2006, 2007 and 2008, the plan brochures for all the nationwide plans had similarly worded statements of SGD non-coverage.

40.     Upon information and belief, no nationwide FEHBP plan offered any SGD coverage until calendar year 2009.

41.     In March 2008, Defendants issued a "call letter" directing all prospective plan sponsors for calendar year 2009 to state in their proposals the extent of the plans' SGD coverage. In response, for calendar year 2009, four nationwide plan sponsors: Mail Handlers; Association (now known as Compass Rose); Foreign Service; and Rural Carriers changed their scope of benefits to include SGD coverage.  Of these, only the Mail Handlers plan is open to all federal employees.  The other three are open only to special groups of employees.  As stated in their plan brochures for 2009, all four offered SGD coverage of only up to a maximum of $ 1,000.  None of the other nationwide plan sponsors offered SGD coverage in 2009.

42.     Pursuant to the Freedom on Information Act, Defendants were requested to provide documents relating to this scope of SGD coverage, but Defendants furnished no responsive records that explain or support the decisions to limit the scope of SGD coverage or establish that this scope of coverage would yield meaningful access to SGDs by federal government employees or their family members.

43.     In 2010, the same four plan sponsors continued their SGD coverage, limited to a maximum of $ 1,000.  In addition, Blue Cross Blue Shield (BCBS) offered SGD coverage in 2010, also limited to a maximum of $ 1,000.  No other nationwide plan sponsors offered SGD coverage in 2010.

44.     In 2011, these same five plan sponsors remained the only nationwide plan sponsors to offer any SGD coverage.  BCBS, Rural Carrier, and Foreign Service continued the $1,000 coverage limitation.  The Association Plan, renamed Compass Rose, increased its SGD coverage to $ 1,200.  Mail Handlers reduced its SGD coverage to $ 500 per device.

45.     In 2012, BCBS increased its SGD coverage to $ 1,250.  The other nationwide carriers did not change their SGD coverage from 2011.  The nationwide plans did not change their scope of SGD coverage from 2012 to 2013.  In 2013, among the nationwide plan sponsors offering plans open to all federal workers, four offer plans that expressly exclude SGDs; and two offer plans that impose unique coverage limitations on SGDs (a limit of $ 1,250 or $ 500) not applicable to any other equipment items.  Among the nationwide plan sponsors offering plans open only to select groups of federal workers, one offers a plan that expressly excludes SGDs; the other three offer plans that impose unique coverage limitations on SGDs (a limit of $ 1,200 or $ 1,000) not applicable to any other equipment items.

46.     The SGD coverage limitations stated by these plans are unique.  No other DME item covered by these plans is subject to a comparable coverage limitation.

47.     In addition to these nationwide plans, the FEHBP program includes local plans that have limited geographic scope.  For 2013, there are more than 100 such plans.  Generally, these plans offer health benefits to individuals within a single state or only a part of single state.  Some extend their enrollment to individuals residing in cross-border communities or counties.  Individually and as a group, only a small minority of federal employees select these local plans to be their health care funding source.

48.     Among all the local FEHBP plans, since 2009, some offered SGD coverage equal to that of other medical equipment items; some imposed unique coverage limitations for SGDs that are not applicable to other covered medical equipment items; some excluded SGDs entirely; and some provided no information as to whether or to what extent SGDs are covered.  This pattern of SGD coverage among the local FEHBP plans continues for 2013.

49.     For federal employees who reside in the District of Columbia, there are 5 local plan sponsors for 2013.  Three offer SGD coverage that is equal to that of other medical equipment items, and two expressly exclude SGD coverage.

**C.      Defendants Never Conducted a Complete Factual
           Investigation in Regard to SGD Coverage**

50.     To meet the statutory obligations required for administration of the FEHBP, Defendants must have accurate, complete, and up-to-date factual information about the safety and effectiveness of specific types of treatment, as reported in professional literature, opinion, policy and practice; about the costs of treatments; and about the extent and scope of private

sector employee insurance coverage of treatments.   To acquire this information, Defendants must engage in an ongoing process of factual investigation, analysis and review.  For SGDs, Defendants have not engaged in this process. As a result, with regard to SGDs, Defendants do not possess the information required to meet their statutory duties.

51.     Defendants have not conducted a complete factual investigation of the professional literature, opinion, policy or practice describing the functions, appropriateness and effectiveness of SGDs as treatment for severe speech or language impairments. When asked under the FOIA about the basis for SGD non-coverage, Defendants produced no records that establish they have reviewed the expanding base of professional literature, opinion, policy or practice regarding SGD use since 1990.

52.     Defendants have not conducted a complete factual investigation of the cost of SGD coverage by FEHBP plans.  Defendants have not required FEHBP plan sponsors to justify limited SGD coverage or SGD exclusion on the basis of cost even after being told the cost of SGD coverage will be trivial.  In 2006 Defendants were first informed of a cost estimate prepared by one of the nation's most respected health actuary firms. This information has been shared with Defendants on subsequent occasions as well. The actuary reported that the cost of SGD coverage in an insurance policy or health benefits plan is *"de minimis,"* no more than two cents per person insured per month.  In 2008, Defendants were told by one of the FEHBP plan sponsors that its actuarial estimate of costs associated with $ 1,000 SGD coverage was <u>*zero*</u> and that no premium increase was sought in response to its coverage expansion.   Upon information and belief, Defendant has never conducted a complete, independent and actuarially sound estimate of the cost of SGD coverage by FEHBP plans.

53.     Defendants have never conducted a complete factual investigation of the extent, scope or trend of insurance and health plan SGD coverage that is available to private sector employees.  In 2006, Defendants were asked to review SGD coverage by the nationwide FEHBP plans and to order the removal of their SGD exclusions.  The letter requesting this review described the scope of SGD coverage by public and private health systems of benefits and identified as examples several insurers that covered SGDs and had SGD-specific coverage criteria.  Defendants refused this request, and have, in response to Freedom of Information Act requests, produced no records showing that Defendants conducted any investigation of private sector employee access to SGDs through their insurance or health plans.

54.     In 2008, Defendants' "call letter" directed prospective FEHBP plan sponsors for calendar year 2009 to state whether they will cover SGDs as part of their FEHBP plans. Defendants did not ask these insurers whether they covered SGDs in their private sector policies or plans.  Defendants also did not ask whether these insurers had SGD specific coverage criteria.

55.     Defendants' failure to engage in an ongoing process of factual investigation, analysis and review regarding SGDs is confirmed by their July 25, 2008 admission that they had no records in response to a request for documents "that justify the exclusion of speech generating devices on actuarial (cost) or fact grounds, or on any other basis, in any FEHBP plan."

56.     In contrast to Defendants' actions and omissions in regard to SGD coverage, when Defendants have conducted complete investigations of other specific benefits, they have taken voluntary action, including requiring or mandating coverage.  For example, in 2009, Defendants directed plan sponsors to cover at least two months of services provided by speech language pathologists, who treat individuals with communication disabilities.

**D.    Defendants Have Not Negotiated with FEHBP
Plan Sponsors Over SGD Coverage**

57.    Defendants are statutorily obligated to negotiate with proposed FEHBP plan

sponsors each year in order to establish the scope of benefits covered and the rates to be charged.

Negotiations ensure the statutory goals of the FEHBP are met, including that federal government

employees have health benefits coverage comparable or equivalent to that offered to private

sector workers; that federal workers have access to the best possible coverage at the lowest

possible rates; that the rates charged for health benefits reasonably reflect the cost of those

benefits; and that the health benefits offered to federal government employees reflect current

medical knowledge and standards of medical practice.

58.    Upon information and belief, from 2009-2013, Defendants did not negotiate

regarding SGD coverage with proposed plan sponsors.  Defendants did not require plan sponsors

that proposed to exclude SGD coverage to produce a factual or actuarial basis for the exclusion

of SGDs, and did not require plan sponsors that proposed limited SGD coverage to produce a

factual or actuarial basis for the SGD coverage limitation or to explain how such limitations

permit reasonable access to SGDs.

**E.    Defendants Have Not Ensured that Federal Employees
Have Access to SGDs Comparable or Equivalent to
the SGD Access Available to Private Sector Workers**

59.    SGDs are a routinely covered and approved item of DME or prosthetic device for

private sector employees who have health benefits provided by insurance policies or employer

sponsored health benefits plans.  More than 1,000 insurers and health plans have approved SGDs

for private sector individuals they insure or whose health benefits plans they administer.  Upon

information and belief, when covered, SGDs are subject to the same terms and conditions as other covered DME items or prosthetic devices.

60.      Insurers that have approved SGDs include the largest insurers in the United States as measured by the number of individuals covered.  Four of these insurers: Aetna, CIGNA, United Healthcare and Wellpoint have approved hundreds of SGDs.  Aetna; CIGNA; United Healthcare; and several Wellpoint subsidiary companies have SGD coverage criteria.  In general, insurers use the same definitions of DME and the same description of limitations and exclusions from policy to policy and plan to plan. Upon information and belief, tens of millions of private sector employees have SGD access through their insurance or health plans.

61.      Private insurers that are also FEHBP plan sponsors are among those that cover SGDs.  Among the nationwide plan sponsors, 62 of the 63 BCBS organizations in the United States have approved SGDs.  Among the local plan sponsors, for at least the past several years, approximately 80% of all local plan providers have approved SGDs for private sector workers they insure.  Upon information and belief, tens of millions of private sector employees have SGD access through insurance or health plans issued or administered by FEHBP plan sponsors.

62.      By contrast, in 2013, five FEHBP nationwide plan sponsors offer no SGD coverage and another five nationwide plan sponsors offer SGD coverage limited to $ 500 to $ 1,250.  The SGD coverage limitations are unique: there are no similar coverage limitations applicable to other covered DME items.  Defendants fail to ensure SGD coverage for federal workers is equivalent or comparable to SGD coverage available to private sector workers.

F.      **Defendants Have Not Ensured Federal Workers
Receive the Best Coverage at the Lowest Cost**

63.     SGDs are rarely needed but of extraordinary importance.  The ability to communicate has been described as "vital" and the inability to do so effectively adversely affects self-perception, independence, access to health care, and many of the other routine activities of daily living that individuals without communication impairments can and do take for granted. These adverse effects can be substantially reduced or even eliminated if the individual is provided access to speech language pathology treatment, such as an SGD.

64.     Because SGDs are of such importance, and because of their exceedingly low need and correspondingly *de minimis* costs, SGDs are routinely covered and provided when medically necessary by an overwhelming number of health insurers and employer sponsored health plans that provide health benefits to private sector workers.  These same reasons also have led to SGD coverage by all public health benefits programs.

65.     That FEHBP plans exclude SGDs from coverage or limit coverage is without either factual or actuarial justification.  These exclusions and limitations are not based on a failure by SGDs to fit within or meet the criteria of the plans' DME benefits category, or a failure of the characteristics of SGD need to meet the plans' definitions of medical necessity. SGD exclusions or limitations also do not result from their cost.  Instead, the FEHBP plans' SGD exclusions and limitations result directly and exclusively from Defendants' complete disregard for SGD coverage evidenced by its repeated failure to require the plans to provide any explanation for the exclusions and limitations and Defendants' repeated failure to negotiate with the plan sponsors for SGD coverage.

66.     Neither the FEHBP plan sponsors nor Defendants have any basis to conclude there will be any meaningful adverse effects on federal employees, on the United States

Government, or on any FEHBP plan sponsor if SGDs are covered by all plans under the same terms and conditions as other covered DME items.

67.     By not considering the importance of SGDs or their costs in discussions and negotiations with FEHBP plan sponsors, Defendants failed to ensure federal government employees have access to the best possible coverage at the lowest possible rates.

G.     **Defendants Have Not Ensured FEHBP Plan Coverage is Consistent with Changes in Medical Knowledge or Standards of Practice**

68.     When the FEHBP was created, Congress understood that increasing knowledge about health conditions will lead over time to new tools and new methods of treatment for illnesses, injuries, conditions and diseases.  "Therefore, the committee believes it unwise for the legislation [creating the FEHBP] to freeze the pattern of benefits so that future contracts could not rapidly adapt to new developments in this field."  S.Rep. 86-468, 86th Cong. 1st Sess. 10 (July 2, 1959).

69.     Every other system of health benefits in the United States, including insurers that provide or administer benefits for private sector workers and are FEHBP plan sponsors, "rapidly adapt[ed] to new developments in this field" and accepted SGD coverage.  By contrast, Defendants never investigated, discussed, analyzed or reviewed the relevant professional literature, or professional opinion, policy or practice related to the appropriateness or effectiveness of SGDs.  Its approach to SGDs has been to accept whatever the plan sponsors proposed to the detriment of federal employees and their dependents who could benefit from SGD coverage.

**COUNT 1**

70.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-69 in the complaint as if fully set forth herein.

71.     Defendants' acts and omissions regarding SGD coverage by FEHBP plans violate Defendants' obligations under the FEHB Act and are arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law.  These acts and omissions include:

a.      Defendants' failure to engage in a process of complete and ongoing investigation of the professional literature, opinion, policy, practice and costs related to SGDs;

b.      Defendants' lack of a factual or actuarial basis to allow FEHBP plans to offer no SGD coverage or to impose unique limits on SGD coverage;

c.      Defendants' failure to engage in a process of negotiation regarding SGDs, an important, rarely needed, and low-cost benefit, and instead to accept without discussion FEHBP plan sponsors' proposals to offer no coverage or limited coverage that may not provide meaningful SGD access;

d.      Defendants' failure to ensure that federal government employees have SGD access through their FEHBP plans comparable or equivalent to that of private sector workers;

e.      Defendants' failure to ensure that federal government employees have full and meaningful access to SGD coverage, to ensure that they have access to the best scope of coverage, the lowest costs of coverage, and to ensure that the costs of covered benefits reasonably and equitably reflect the costs of those benefits; and

f.      Defendants' failure to ensure that SGDs are meaningfully covered by FEHBP plans and to ensure that the health benefits available to federal government employees reflect current medical knowledge and practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Declare that Defendants' failure to engage in a process of complete and ongoing investigation of the professional literature, opinion, policy, practice and costs related to SGDs is unlawful;

2. Declare that Defendants' failure to engage in a process of negotiation regarding SGDs, and instead to accept without discussion FEHBP plan sponsors' proposals to offer no coverage or limited coverage that may not provide meaningful SGD access is unlawful;

3. Declare that Defendants' failure to ensure that federal government workers have SGD access through their FEHBP plans that is comparable or equivalent to the SGD access available to private sector workers through their health benefits is unlawful;

4. Declare that Defendants' failure to ensure that the scope and extent of health benefits available to federal government employees reflects current medical knowledge and practices related to SGD need and use is unlawful;

5. Order Defendants to require all FEHBP plans to provide a factual or actuarial basis, with complete citation and calculation, to justify non-coverage of SGDs or any limit to SGD coverage;

6. Order Defendants to conduct a complete factual investigation of the professional literature, opinion, policy and practice related to the appropriateness and effectiveness of SGDs as a form of treatment for severe communication impairments, and of the scope and extent of SGD coverage available to private sector employees through their health benefits;

7. Order Defendants to determine  whether SGDs should be covered by all FEHBP plans that include "durable medical equipment" as a covered benefit and whether any unique limitation on SGD coverage is justified and that such determination be made public;

8. Order Defendants to re-open all agreements with FEHBP plan sponsors and to negotiate regarding SGD coverage;

9. Order that all agreements with FEHBP entered into with plan sponsors which do not require full SGD coverage be set aside as arbitrary and capricious if such agreements are not supported by a reasonable factual and actuarial basis;

10. Award Plaintiffs their reasonable costs and attorney's fees;

11. Award any other relief that the Court deems just and proper.

Respectfully submitted,

   /s/ Jeffrey S. Gutman
 JEFFREY S. GUTMAN (D.C. Bar No. 416954)
The George Washington University Law School
2000 G Street, N.W.
Washington, D.C. 20052
(202) 994-7463 (phone)
(202) 994-4693 (fax)
jgutman@law.gwu.edu (e-mail)

LEWIS A. GOLINKER[1]
401 East State Street, Suite 300
Ithaca, New York 14850
(607)_277-7286 (phone)
(607) 277-5239 (fax)
lgolinker@aol.com (e-mail)

Attorneys for Plaintiff

Dated: February 18, 2013

---

[1]   A motion for admission pro hac vice will be filed shortly.