UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                  |   |                                |
|----------------------------------|---|--------------------------------|
| DOUGLAS B. HURON, *et al.*,      | ) |                                |
|                                  | ) |                                |
| Plaintiffs,                      | ) |                                |
|                                  | ) |                                |
| v.                               | ) | Civil Action No. 13-0211 (ABJ) |
|                                  | ) |                                |
| JOHN BERRY, *et al.*,            | ) |                                |
|                                  | ) |                                |
| Defendants.                      | ) |                                |

## MEMORANDUM OPINION

Plaintiffs Douglas B. Huron ("Huron") and the United States Society for Augmentative and Alternative Communication ("USSAAC") have brought this action against the Office of Personnel Management ("OPM") and former OPM director John Berry,[1] in his official capacity, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2012). Compl. ¶¶ 9, 13, 17–18 [Dkt. # 1]. Plaintiffs challenge defendants' approval of health benefits plans for federal employees that exclude or limit coverage of speech generating devices ("SGDs"), which are items of medical equipment that assist communication-impaired individuals with daily communication needs. *Id.* ¶¶ 1, 4. Plaintiffs assert that defendants' acts and omissions regarding SGD coverage are arbitrary, capricious, an abuse of discretion, and contrary to law, *id.* ¶ 71, and they seek declaratory and injunctive relief from the Court. *Id.*, Prayer for Relief, ¶¶ 1–9.

Defendants moved to dismiss plaintiffs' complaint for lack of standing or, in the alternative, for failure to state a claim upon which relief may be granted, pursuant to Federal

---

1 The Court substitutes current OPM Acting Director Elaine Kaplan for Mr. Berry but disregards the plaintiffs' use of the incorrect name as "not affecting the parties' substantial rights." Fed. R. Civ. P. 25(d).

Rule of Civil Procedure 12(b)(6).  Defs.' Mem. in Supp. of Mot. to Dismiss Compl. ("Defs.' Mot.") at 2 [Dkt. # 13].  For the reasons stated below, the Court will grant defendants' motion to dismiss because plaintiffs do not have standing to bring this case.

## BACKGROUND

### I. Statutory Background

In 1959, Congress enacted the Federal Employee Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901–8914, to provide a subsidized health benefits program for federal employees. Federal Employee Health Benefits Act of 1959, Pub. L. No. 86-382, 73 Stat. 708.  Under FEHBA, OPM has broad authority to administer the Federal Employee Health Benefits Program ("FEHBP"), *Bolden v. Blue Cross & Blue Shield Ass'n*, 848 F.2d 201, 203 (D.C. Cir. 1988), and "may contract for or approve" various types of health benefits plans offered by private insurance carriers.  5 U.S.C. §§ 8903–8903a.  In exchange for premiums paid by the employees and government, carriers provide, pay for, or reimburse certain healthcare costs of FEHBP enrollees. *Id.* § 8901(7); *OAO Healthcare Solutions, Inc. v. Nat'l Alliance of Postal & Fed. Emps.*, 394 F. Supp. 2d 16, 19 (D.D.C. 2005).

Each health benefits contract must contain a detailed statement of included benefits, and rates must "reasonably and equitably reflect the cost of the benefits provided."  5 U.S.C. § 8902(d), (i).  Each year, OPM may renegotiate coverage and rates "based on past experience and benefit adjustments," but rate adjustments must be consistent with insurance industry practice.  *Id.* § 8902(i).  During a four-week "open season" each year, employees may transfer plans or cancel their FEHBP enrollment.  5 U.S.C. § 8905(g); 5 C.F.R. § 890.301(f) (2013).

## II. Factual Background

USSAAC is "an organization dedicated to supporting the needs and desires of people who use" augmentative and alternative communication. *USSAAC's Vision*, USSAAC, http://ussaac.org/our-vision.cfm (last visited Dec. 23, 2013). Its members include individuals with severe communication impairments, some of whom are enrolled in FEHBP, as well as family members, speech-language pathologists, disability educators and advocates, and augmentative and alternative communication device manufacturers. Compl. ¶¶ 1, 13. To secure and protect the rights of its members, USSAAC advocates "for the broadest scope of SGD coverage by all funding programs and sources" and aims to influence public policy related to SGD coverage. *Id.* ¶ 14. SGDs are augmentative and alternative communication devices that assist communication-impaired individuals by speaking typed messages out loud, and each SGD costs approximately $5000 without insurance. *See id.* ¶¶ 9–10, 23; *see also id.* ¶ 29 (indicating that most SGD users acquire funding from health benefits systems).

Huron is a member of USSAAC who lives in the District of Columbia and relies on an SGD to communicate with family, friends, and colleagues. *Id.* ¶ 9. He obtained his current SGD through private insurance but needs a replacement as his current one no longer functions. *Id.* ¶ 10. In early 2009, Huron switched from his private-sector insurance policy to join his wife's FEHBP plan, which is provided by the Government Employees Health Association ("GEHA"). *Id*. He also receives benefits from Medicare. *Id.* The GEHA plan expressly excludes SGDs from coverage, *id.* ¶ 11; GEHA Benefit Plan, Ex. 2 to Reply Mem. in Supp. of Mot. to Dismiss Compl., at 5 [Dkt. # 17-2] (indicating that "[c]omputer devices to assist with communications" are not covered), and Medicare will only reimburse Huron for 80% of the cost of a new SGD. Pls.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss the Compl. ("Pls.' Opp.") at 19 n.11 [Dkt.

# 15]. Pending resolution of this case, and in order to participate in this action, Huron is currently borrowing an SGD from SGD manufacturer DynaVox, which he must return at the close of litigation.[2] Pls.' Opp. at 20.

Although Huron's GEHA plan excludes SGD coverage, SGD coverage has been available through several FEHBP plans since 2009. Compl. ¶¶ 44, 49. Prior to 2009, nationwide plan sponsors denied SGD coverage requests using an exclusion that did not mention SGDs specifically. *Id.* ¶¶ 37–39. In 2008, OPM directed plan sponsors to specify the extent of SGD coverage they would provide moving forward, prompting the first FEHBP plan sponsors to offer SGD coverage in 2009. *Id.* ¶¶ 41, 54; Mar. 11, 2008 FEHB Program Carrier Letter, Ex. A to Defs.' Mot., at 4 [Dkt. # 13-2]. At that time, four nationwide plan sponsors proposed to offer SGD coverage of up to $1000, and a fifth sponsor added the same coverage the following year. Compl. ¶¶ 41, 43. Since 2009, three local plan sponsors, who offer plans available only to District of Columbia residents, have also added SGD coverage. *Id.* ¶ 48.

As of today, five of ten FEHBP nationwide plan sponsors and three of five FEHBP local plan sponsors cover SGDs to some extent. *Id.* ¶¶ 22, 44–45, 49. Of the five nationwide plan sponsors with SGD coverage, two offer plans open to all federal workers while three offer plans only open to select groups of federal workers. *Id.* ¶ 45. All of these plans limit SGD coverage to between $500 and $1250 – limitations that do not apply to other covered items in the durable

---

2   Defendants argue that, because Huron currently has a functioning SGD, he has no injury. Defs.' Mem. at 12. The Court, however, will not give dispositive weight to this argument because DynaVox has indicated that Huron's current SGD is on loan only to help him participate in this litigation, and to the extent that his access to the SGD might destroy standing, DynaVox will recall the SGD. Pls.' Opp. at 20 n.13.

medical equipment category.³  *Id.* ¶¶ 45–46, 62.  The three local plan sponsors, on the other hand, offer SGD coverage equal to other durable medical equipment.  *Id.* ¶ 49.

Outside of FEHBP, all other federal government-sponsored health benefits programs cover SGDs when medically necessary, including Medicaid, Medicare, Tricare, and the Veterans Administration.  *Id.* ¶¶ 3, 31–32.  Similarly, SGDs are routinely covered in the private sector, including by a majority of insurers that participate in FEHBP.  *Id.* ¶¶ 3, 33, 59, 61, 64.  Almost without exception, plans outside of FEHBP cover SGDs to the same extent as all other covered durable medical equipment.  *Id.* ¶¶ 5, 34, 59.

### III. Procedural Background

Plaintiffs filed the one-count complaint in this action on February 18, 2013.  Count I alleges that defendants' acts and omissions regarding SGD coverage violate their obligations under FEHBA and are arbitrary, capricious, an abuse of discretion, and contrary to law in violation of the APA.  *Id.* ¶ 71.  Specifically, plaintiffs allege that defendants failed to:  (1) conduct a complete factual investigation in regard to SGD coverage; (2) require plan sponsors to justify exclusions and limitations on SGD coverage; (3) negotiate with plan sponsors over SGD coverage; (4) ensure that federal employees have the same access to SGDs that is available to private sector employees; (5) ensure that federal employees receive the best coverage at the lowest cost; and (6) ensure that plan coverage is consistent with changes in medical knowledge or standards of practice.  *Id.* ¶¶ 50–71.

---

3   In plans that offer SGD coverage, SGDs typically fall under one or more categories of covered care.  Compl. ¶ 30.  Medicare covers SGDs as durable medical equipment, for instance, while Tricare and the Veterans Administration cover SGDs as prosthetic devices.  *Id.* ¶ 31.

5

Plaintiffs seek declaratory and injunctive relief, asking the Court to:

- Order Defendants to require all FEHBP plans to provide a factual or actuarial basis, with complete citation and calculation, to justify non-coverage of SGDs or any limit to SGD coverage; . . . [and]

- Order that all agreements with FEHBP entered into with plan sponsors which do not require full SGD coverage be set aside as arbitrary and capricious if such agreements are not supported by a reasonable factual and actuarial basis.

*Id.*, Prayer for Relief, ¶¶ 5, 9. Plaintiffs also "seek injunctive relief ordering Defendants to direct all FEHBP plan sponsors to cover SGDs to the same extent and scope as other covered durable medical equipment, unless they produce a factual or actuarial justification to support lesser coverage."[4] *Id.* ¶ 6.

Defendants move to dismiss the complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) on the ground that plaintiffs do not have standing to bring these claims. Defs.' Mot. at 2. They also move, in the alternative, to dismiss the complaint for failure to state a claim under Rule 12(b)(6), arguing that the complaint does not challenge any final agency decision by OPM. *Id.*

## STANDARD OF REVIEW

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors*

---

4 Additionally, plaintiffs make several requests not relevant to the Court's inquiry at this time, including requests for the Court to declare defendants' plan negotiations and approvals unlawful and order defendants to conduct investigations and reopen negotiations over SGDs. *Id.*, Prayer for Relief, ¶¶ 1–4, 6–8.

*Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the Court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

**ANALYSIS**

**I. Huron does not have standing to challenge defendants' FEHBP plan approvals.**

"To state a case or controversy under Article III, a plaintiff must establish standing." *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011); *see also Lujan*, 504 U.S. at 560. Standing is a necessary predicate to any exercise of federal jurisdiction, and if it is lacking, then the dispute is not a proper case or controversy under Article III, and federal courts have no subject-matter jurisdiction to decide the case. *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012).

To establish constitutional standing, a plaintiff must demonstrate that (1) he has suffered an "injury-in-fact"; (2) the injury is "fairly traceable" to the challenged action of the defendant; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal quotation marks omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan*, 504 U.S. at 561. When reviewing the standing question, the Court must be "careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *In re Navy Chaplaincy*, 534 F.3d 756, 760 (D.C. Cir. 2008). Therefore, for the purposes of the standing analysis, the Court will assume that defendants' approval of FEHBP plans excluding or limiting SGD coverage was unlawful.

Here, the Court finds that Huron suffered an injury-in-fact when he was unable to replace his non-functioning SGD through his wife's GEHA plan, which does not cover SGDs. *See* Pls.' Opp. at 20. The injury-in-fact test requires a plaintiff to allege that he has suffered "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent,

not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations omitted), quoting *Allen v. Wright*, 468 U.S. 737, 755 (1984). Huron's injury is concrete, particularized, and actual because his current SGD is no longer functioning, and he is unable to obtain a replacement without significant financial cost because his current health benefits plan does not cover SGDs and Medicare only covers up to 80%. Compl. ¶¶ 10–11; Pls.' Opp. at 19 n.11. Without an SGD, Huron cannot communicate effectively with his family, friends, and colleagues. *Id.* ¶ 9. His current SGD must be returned at the close of the case; Huron, therefore, is experiencing a cognizable injury-in-fact, satisfying the first requirement of the standing analysis. *See Lujan*, 504 U.S. at 560, 561 n.1. But Huron does not have standing because he cannot satisfy either the causation or redressability prongs.

### A. Huron cannot establish causation.

"It is well established that [c]ausation, or traceability, examines whether it is substantially probable that the challenged acts of the defendant, not of some absent third party, will cause the particularized injury of the plaintiff." *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 176 (D.C. Cir. 2012) (alteration in original), quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (internal quotation marks omitted); *see also Freedom Republicans, Inc. v. FEC*, 13 F.3d 412, 418 (D.C. Cir. 1994) (stating that "fair traceability turns on the causal nexus between the agency action and the asserted injury"). Causation cannot exist when the injury alleged is self-inflicted. *See Grocery Mfrs.*, 693 F.3d at 177–78; *Petro-Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C. Cir. 1989). For example, in *Petro-Chem*, a national trade organization of hazardous waste disposal companies challenged Environmental Protection Agency ("EPA") regulations that authorized hazardous waste disposal in geologic repositories. 866 F.2d at 434. According to the organization, these regulations placed members in a "lose-lose" situation: if

members chose not to use geologic repositories for hazardous waste disposal, they would lose potential business opportunities, but if they chose to use geologic repositories, they would face potential liability from leaking repositories. *Id.* at 438. Concluding that the organization lacked standing, the D.C. Circuit explained that members could avoid potential liability simply by choosing not to use geologic repositories. *Id.* Those who voluntarily chose to use geologic repositories presumably incurred potential liability in their own economic self-interest, thereby inflicting an injury that was "'so completely due to the [complainant's] own fault as to break the causal chain.'" *Id.* (alteration in original), quoting 13 Charles Alan Wright et al., *Federal Practice and Procedure* § 3531.5 (2d ed. 1984).

Similarly, in *Grocery Manufacturers*, the EPA granted partial waivers allowing fuel manufacturers to introduce a new type of renewable fuel into the market. 693 F.3d at 173. Trade associations with members in the petroleum and food industries challenged EPA's waiver grants, claiming in part that the waivers effectively forced fuel refiners and importers – which were obligated to meet renewable fuel requirements set by Congress – to introduce the new fuel into commerce. *Id.* at 172, 176–77. Concluding that the plaintiffs lacked standing, the D.C. Circuit explained that the EPA waivers did "not force, require, or even encourage fuel manufacturers . . . to introduce the new fuel;" rather, the waivers simply permitted them to do so. *Id.* at 177. If any refiner or importer voluntarily chose to introduce the new fuel, any resulting injury would be a "'self-inflicted harm' not fairly traceable to the challenged government conduct." *Id.* Thus, the causation element of standing was missing. *Id.*

Here, Huron's injury – the inability to obtain an SGD through his wife's GEHA plan – is self-inflicted, and that severs the causal link necessary to establish standing. Like the voluntary actions in *Petro-Chem* and *Grocery Manufacturers*, the Huron family voluntarily chose to enroll

10

and stay enrolled in a plan that specifically excludes SGDs from coverage, despite having the option to select and transfer to a plan that covers SGDs. When they enrolled in FEHBP in 2009, four nationwide and three local plan sponsors offered limited SGD coverage. Compl. ¶¶ 41, 48–49. A fifth nationwide plan sponsor added SGD coverage in 2010. *Id.* ¶¶ 43–45. Two of these nationwide plans are open to all federal employees. *Id.* ¶ 45. So, before bringing this action, Huron and his family had three opportunities – during the open seasons of 2010, 2011, and 2012 – to transfer from their GEHA plan to one of several other FEHBP plans with SGD coverage.[5] Consequently, just as the EPA's regulations in *Petro-Chem* permitted but did not force hazardous waste companies to use geologic repositories and just as the EPA's waivers in *Grocery Manufacturers* permitted but did not force refiners and importers to introduce a new fuel into the market, defendants' health benefits plan approvals permitted but did not force the Huron family to choose a plan without SGD coverage. *See Grocery Mfrs.*, 693 F.3d at 177; *Petro-Chem*, 866 F.2d at 438.

It makes no difference that the Huron family's decision to forgo these SGD coverage options was motivated by cost considerations and other family members' healthcare needs: economic considerations that cause an individual to reject a certain option because it is less favorable in some ways and more favorable in others does not transform an otherwise voluntary decision into a coerced one. *See Grocery Mfrs.*, 693 F.3d at 177 (explaining that, if a fuel manufacturer chose to meet its renewable fuel requirements by introducing the contested new fuel over another type of fuel due to cost considerations, that choice to incur potential injury would be "grounded in economics" and "most certainly not" caused by the challenged EPA

---

5    Several health benefits plan sponsors offer more than one plan. Compl. ¶ 22. So, even though Huron's wife is ineligible for a nationwide plan open only to certain employees, Pls.' Opp. at 6 n.3, he likely had at least five nationwide and local plans to choose from.

waivers); *Petro-Chem*, 866 F.2d at 438 (explaining that hazardous waste disposal companies that chose geologic repositories over safer methods did so in their own economic self-interest, breaking the causal chain between the threatened injury and EPA's regulations). The fact remains that the Hurons chose – on their own – to forgo coverage options that would have met Huron's SGD coverage needs because the family decided cost considerations and other family members' healthcare needs came first. Consequently, any injury related to Huron's inability to obtain an SGD through his wife's GEHA plan is self-inflicted and does not satisfy the causation requirement.[6] *See also Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (holding that any injury stemming from uncertainty over an agency regulation was self-inflicted because the plaintiffs failed to seek clarification from the agency itself and therefore "*chose*[] to remain in the lurch"); *Bhd. of Locomotive Eng'rs v. Surface Transp. Bd.*, 457 F.3d 24, 28 (D.C. Cir. 2006) (concluding that a union's inability to bargain over a railroad transaction was self-inflicted because the union agreed to that limitation in its collective bargaining agreement).

### B. Huron cannot establish redressability.

To satisfy the third requirement for standing, a plaintiff must demonstrate that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable

---

6  Viewed in this light, Huron's situation is distinguishable from previous challenges to health benefits plan approvals where courts assumed or recognized standing. For example, in *Doe v. Devine*, individuals receiving psychiatric care under a FEHBP plan challenged OPM's approval of a reduction in mental health benefits. 703 F.2d 1319, 1320–21 & 1320 n.1 (D.C. Cir. 1983). Similarly, in *National Treasury Employees Union v. Campbell*, a federal employees' union challenged an approval of a 35.3% rate increase. 589 F.2d 669, 671 (D.C. Cir. 1978). Through no actions of their own, the plaintiffs in *Doe* had their mental health benefits reduced, and the plaintiffs in *National Treasury* had their insurance rates increased. *Doe*, 703 F.2d at 1322–23; *Nat'l Treasury Emps. Union*, 589 F.2d at 671. That is not the case here. Huron did not lose SGD coverage through no action of his own: he lost SGD coverage when *he and his family* knowingly selected a plan that did not cover SGDs.

decision.'" *Lujan*, 504 U.S. at 561. "Redressability examines whether the relief sought, assuming that the Court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Fla. Audubon Soc'y*, 94 F.3d at 663–64 (footnote omitted). Here, Huron's injury is his inability to obtain an SGD through his current GEHA plan.[7] Pls.' Opp. at 20. To satisfy the redressability standing requirement, then, plaintiffs must demonstrate that a favorable ruling from the Court is likely to result in Huron being able to obtain an SGD through his current GEHA plan. Plaintiffs, however, do not request any relief specific to Huron's GEHA plan. Instead, they distinguish in their request for relief between current and future FEHBP plans generally. Pls.' Opp. at 12 n.8. For the FEHBP plans currently in effect, plaintiffs ask the Court to declare unlawful and set aside OPM's 2012 approvals of all 2013 plans that do not provide SGD coverage equal to other covered durable medical equipment. *Id.*; *see* Compl., Prayer for Relief, ¶¶ 1–4. For the FEHBP plans that OPM will approve in the future, plaintiffs ask the Court to order that defendants require all FEHBP plan sponsors to *either* (1) offer full SGD coverage or SGD coverage equal to other covered durable medical equipment, *or* (2) justify any SGD exclusions and limitations with a factual or actuarial basis. Compl. ¶ 6; *id.*, Prayer for Relief, ¶¶ 5, 9.

---

7    Plaintiffs identify Huron's injury-in-fact as "GEHA's non-coverage" of SGDs. Pls.' Opp. at 20. The mere existence of a plan without SGD coverage, however, is not in itself an injury. *See Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1428–29 (D.C. Cir. 1996) (clarifying that the injury in a previous case was not the "mere existence" of an unconstitutional veto power but rather the increased "noise, activity, and danger that resulted" from that power), citing *Metro. Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252 (1991). So, the Court assumes plaintiffs mean to allege that the *impact* of this non-coverage is Huron's injury-in-fact. *See id.* (stating that "non-coverage of the SGD has impacted Mr. Huron in a 'personal and individual way'"), quoting *Lujan*, 504 U.S. at 560 n.1.

Neither request for relief is likely to redress Huron's inability to obtain an SGD through his current GEHA plan. According to plaintiffs, if the Court sets aside 2012 approvals for 2013 plans that exclude or limit SGD coverage, "[t]he result of such an order will be that OPM will, for the duration of the plan year, require such coverage." Pls.' Opp. at 12 n.8. This reasoning is flawed. If the Court sets aside all plan approvals, only three FEHBP sponsors' plans will survive: the plans from three local sponsors that offer SGD coverage equal to other durable medical equipment. Compl. ¶ 49. Although this would result in all remaining plans providing equal SGD coverage, this result would not alleviate Huron's inability to obtain an SGD through his wife's GEHA plan because that plan would no longer exist. Huron, therefore, would be required to obtain SGD coverage through a different FEHBP plan – an option that he has already rejected as not meaningful or one that would alleviate his injury. *Id.* ¶ 12. Consequently, Huron's first request for relief will not redress his identified injury.

Huron's second request for prospective relief also fails to satisfy the redressability requirement. If the Court orders defendants to require plan sponsors to *either* offer SGD coverage – in full or to the same extent as other durable medical equipment – *or* justify their decisions not to, then GEHA could continue to exclude SGD coverage as long as it provides a factual or actuarial basis for its decision. This would again leave Huron without redress so long as GEHA can justify SGD non-coverage.

Moreover, any argument that such an order would result in GEHA offering SGD coverage equal to other durable medical equipment is entirely speculative for several reasons. First, the Court cannot order OPM to change its approval standards. When an action is left to an agency's discretion, a court "has no power to specify what the action must be." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004). Here, contracting for health benefits plans

14

and prescribing standards for these plans is plainly within OPM's discretion. 5 U.S.C. § 8902(a), (e). Therefore, the Court may not direct OPM to approve only health benefits plans with full SGD coverage or coverage equal to other covered durable medical equipment. Second, even if OPM changes its standards voluntarily, Huron's injury may not be redressed because nothing prevents GEHA from refusing to continue to contract with FEHBP if SGD coverage is mandatory, and nothing prevents GEHA from increasing the cost of its health benefits plan in order to provide that coverage. *See* 5 U.S.C. § 8902(i) (specifying that the rate of each health benefits plan shall reasonably reflect the cost of the benefits provided). Either way, Huron's injury of not being able to obtain SGD coverage at the same cost under his wife's current plan would not be redressed. Huron therefore does not have standing in this case.

## II. USSAAC does not have standing to challenge defendants' FEHBP plan approvals on behalf of its members.

An association has standing to sue on behalf of its members if it can demonstrate that "(1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit." *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002), citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342–43 (1977). Failure to satisfy any of those requirements defeats an association's standing. *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 815 (D.C. Cir. 2006).

Here, USSAAC fails to satisfy the first prong of associational standing because it cannot demonstrate that any of its members has standing to sue in his or her own right. As the Court concluded above, Huron does not have individual standing because he failed to establish that his injury was caused by defendants' FEHBP plan approvals and would likely be redressed by a

favorable decision from this Court. Moreover, USSAAC does not demonstrate that any other USSAAC members have standing. It alleges that there are other USSAAC members enrolled in FEHBP who require SGDs and that these members suffer delays and high costs to obtain SGDs, if they are able to obtain SGDs at all. Compl. ¶¶ 1, 15; Pls.' Opp. at 1–2. USSAAC does not, however, suggest that these other members are unable to enroll in a FEHBP plan with SGD coverage, so they fail to show that these injuries are not self-inflicted. Moreover, even if these members were limited to plans without SGD coverage, USSAAC offers no facts to show that its other members' injuries would be redressed by the relief requested in this case, even though Huron's injury would not be redressed. As a result, USSAAC does not have standing to bring this claim on behalf of its members.[8]

---

8   Because an association must satisfy all prongs to have standing, the Court need not address whether USSAAC can satisfy the remaining two prongs. *Am. Chemistry Council*, 468 F.3d at 815.

## CONCLUSION

For the reasons stated above, the Court finds that neither Huron nor USSAAC satisfies the constitutional standing requirements. The Court will therefore grant defendants' motion to dismiss the complaint in its entirety for lack of subject-matter jurisdiction.[9] A separate order will issue.

/s/ Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: December 23, 2013

---

9    Defendants also argue that, to the extent the Court construes the complaint as asserting a claim for denied benefits, it should dismiss the complaint because plaintiffs have not exhausted administrative remedies. Defs.' Mem. at 6 n.4. Agency rules require individuals covered by a FEHBP plan to "exhaust both the carrier and OPM review processes . . . before seeking judicial review *of the denied claim*." 5 C.F.R. § 890.105 (2013) (emphasis added). It appears clear, however, that plaintiffs do not assert a claim for denied benefits, but rather a challenge to defendants' plan approvals. No statute or agency rule requires administrative exhaustion for such a challenge, and the Court is not free to impose an exhaustion requirement in its own discretion. *Darby v. Cisneros*, 509 U.S. 137, 154 (1993). Therefore, plaintiffs did not need to exhaust administrative processes before seeking judicial review.